**FILED**

**June 22, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **E.M.-1 and E.M.-2**

**No. 20-1035** (Cabell County 19-JA-28 and 19-JA-229)

**MEMORANDUM DECISION**

Petitioner Mother B.M., by counsel Allison K. Huson, appeals the Circuit Court of Cabell County's December 1, 2020, order terminating her parental rights to E.M.-1 and E.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Krista Conway, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as E.M.-1 and E.M.-2, respectively, throughout this memorandum decision.

[2]Petitioner raises a second assignment of error in which she alleges that the circuit court erred in failing to grant her a post-dispositional improvement period. This argument, however, is not properly preserved for appeal, as petitioner failed to include any citation to the record to show where this issue was addressed below. According to West Virginia Code § 49-4-610(3)(A), "[t]he court may grant an improvement period not to exceed six months as a disposition pursuant to section six hundred four of this article when: (A) The respondent moves in writing for the improvement period." Petitioner has included no such written motion in her appendix record or otherwise cited to the transcript of the dispositional hearing to support her assertion that she moved for such an improvement period. This is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that "[t]he brief must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that briefs that "do not 'contain

(continued . . .)

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner had a history of Child Protective Services ("CPS") referrals and an active case related to ongoing issues with obtaining proper medical treatment for E.M.-1.[3] The petition also alleged that petitioner suffered several mental health issues and admitted to not properly taking her medications. Further, shortly before the petition was filed, DHHR personnel responded to a request for assistance from law enforcement concerning a domestic dispute between petitioner and her girlfriend. Petitioner was intoxicated at the time and child E.M.-1 was present with her. After realizing that CPS would have to take custody of the child, petitioner became "very upset" and questioned why she could not take the child back to the home she shared with her girlfriend. According to the petition, petitioner "minimized how dangerous the situation could be with her drinking on medications" while caring for the child. During the CPS investigation, petitioner admitted that she would test positive for marijuana and that she abused the drug in the child's presence. Petitioner also admitted that this incident was not the first time that she and her girlfriend engaged in domestic violence in the child's presence and that fights between them usually occurred when either individual was intoxicated or abusing drugs. As such, the DHHR alleged that petitioner neglected the child by failing to provide safe and adequate living conditions, abusing drugs to the point that her parenting skills were impaired, and failing to comply with her treatment for multiple mental health diagnoses. Following the petition's filing, petitioner waived her preliminary hearing.

In July of 2019, petitioner stipulated to neglecting the child due to her substance abuse and her involvement in domestic violence in the child's presence. As a result, the court adjudicated petitioner of neglect and granted her motion for a post-adjudicatory improvement

---

appropriate and specific citations to the record on appeal . . .' as required by Rule 10(c)(7)" are not in compliance with this Court's Rules. Here, petitioner's brief in regard to this assignment of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, Administrative Order. Accordingly, the Court will not address the assignment of error on appeal.

[3]At the time the initial petition was filed, E.M.-2 was not yet born. The DHHR later filed an amended petition to include this child in the proceedings.

period.[4] The improvement period was continued at various review hearings over the next several months.

The court originally convened the dispositional hearing in May of 2020, but granted petitioner's request to continue the hearing. At that point, both the DHHR and the guardian moved to discontinue petitioner's visitation with the children. In ruling on the motion, the court noted that just one month prior to the hearing, petitioner had been arrested for an altercation with her live-in boyfriend in which she "was intoxicated and attacked [the boyfriend] with a pair of scissors." During her arrest, law enforcement had to use a taser to subdue petitioner. According to the record, petitioner admitted that she was intoxicated, tried to stab her boyfriend, and wanted to kill him. She also took no responsibility for her conduct, "taking the position that had the WVDHHR returned her children, the altercation . . . would not have occurred." The court also noted that petitioner tested positive on a recent drug screen and threatened a visitation supervisor by "balling up her fists and stating 'you better be so lucky you're a worker.'" Further, evidence showed that petitioner refused to follow simple directions during visits, such as changing her child's diaper. Based upon this evidence, the court terminated petitioner's visitation with the children.

In September of 2020, the court held the final dispositional hearing, during which a CPS worker testified to petitioner having received services since April of 2018, including parenting services that began in May of 2018. The CPS worker further testified to petitioner's admission to having been intoxicated when she attacked her boyfriend and that she wanted to kill him. Petitioner also testified and admitted to having used marijuana a few days prior to the hearing. Petitioner explained that she received substance abuse treatment in May of 2020, although she also testified that she "received services through Prestera on and off" over the course of seven years. Based on the evidence, the court found that petitioner had impaired judgment in how she managed her life, substance abuse, and mental health issues and that her continued marijuana use interfered with her medication. Further, the court found that petitioner demonstrated a history of drug treatment followed by a return to drug use. The court also found that petitioner had a significant anger problem and lacked insight into how to control her temper. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The court then terminated petitioner's parental rights.[5] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[4]In November of 2019, petitioner again stipulated to these same facts in regard to E.M.-2 and the amended petition. The court adjudicated petitioner of neglect in regard to that child as well.

[5]According to respondents, the father has been adjudicated and the DHHR will seek termination of his parental rights. The permanency plan for the children is adoption in the current foster home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that termination of her parental rights was in error because she was compliant overall with her post-adjudicatory improvement period. She argues that the possibility of parental improvement in this case was not speculative because she demonstrated that she was committed to completing the goals of her family case plan. Petitioner also argues that she was successfully clean from substances throughout the majority of the improvement period and participated in domestic violence counseling. We find, however, that petitioner is entitled to no relief.

Simply put, petitioner's arguments on appeal ignore the reality of the proceedings below. While it is true that petitioner attended domestic violence counseling, she minimizes her arrest in April of 2020 for attacking her boyfriend with scissors and her expressed desire to kill him. Petitioner was intoxicated during this incident and had to be tased in order for law enforcement to effectuate her arrest. Far from demonstrating overall compliance with her improvement period, this incident demonstrates that the conditions that necessitated the petition's filing continued unabated, despite the implementation of remedial services. Further, petitioner makes much of the fact that she submitted to substance abuse treatment after this incident but ignores the fact that she continued to abuse controlled substances after her treatment. In fact, she admitted to abusing marijuana shortly before the final dispositional hearing. As such, we find that petitioner was not compliant with the terms of her improvement period and, in fact, continued to engage in the same conduct for which she was adjudicated.

Based upon this evidence, the court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon these findings. As set forth above, the court had ample evidence upon which to make these determinations. Further, as this Court has held,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings regarding the father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children in this matter. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

[a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 1, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6